UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRADLEY BEATTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:18-CV-251-PPS/MGG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Bradley Beatty appeals the Social Security Administration's decision to deny his application for disability benefits. Beatty suffers from several medical issues including degenerative disc disease, keratoconus (a progressive eye disease) with headaches, bipolar disorder, depression and anxiety. [Tr. 410.][1] An administrative law judge found that Beatty was not disabled within the meaning of the Social Security Act and that he had the residual functional capacity (RFC) to perform light work with some restrictions.

Beatty challenges the ALJ's decision on three grounds. First, he contends the ALJ's finding that he does not meet or equal Listing 12.04 and 12.06 is not supported by substantial evidence. Second, Beatty argues that the ALJ improperly evaluated the medical opinion evidence. Third, Beatty contends the RFC fails to include all of his

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 10.

impairments. Because I find the ALJ's analysis of the medical opinion evidence is flawed, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

Mr. Beatty has a number of significant medical and psychological challenges. The ALJ found that Beatty had the severe impairments of status post cervical fusion, degenerative disc disease of the cervical spine, history of bilateral keratoconus with reported associated headaches, bipolar disorder, adjustment disorder with mixed anxiety/depression, mood disorder, and attention deficit hyperactivity disorder (ADHD). [Tr. 17.] Aside from these severe impairments, Beatty also suffered from the non-severe impairments of asthma, obstructive sleep apnea, hyperlipidemia, and hearing loss, which are fully recounted in the ALJ's opinion and which need not be repeated here. [*See* Tr. at 18.]

Before diving into the evidence, let's start with a review of the legal framework. My role is not to determine from square one whether or not Beatty is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  Of course, there has to be more than a "scintilla" of evidence.  *Id.*  So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion."  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

My focus will be on the ALJ's handling of Beatty's mental health impairments; there are several deficiencies in that analysis.  Beatty argues that the ALJ improperly gave significant weight to the opinions of the state agency psychologists Drs. Ken Lovko and Joelle Larsen, while according only little weight to the opinions of licensed clinical social worker, Jill Uceny, and her supervising physician, Dr. Dean Smith.

Let's first look at a thumbnail view of the evidence in the record touching on Beatty's mental health.  In 2013, Beatty's primary care physician, Dr. Viraj Patel, diagnosed him with depressive disorder and bipolar I disorder without psychotic features. [Tr. 1147.] Beatty took several prescription medications. [Tr. 1148.] Throughout 2014, Beatty was treated and seen by Dr. Shivam Dubey, a psychiatrist at the Bowen Center, who also diagnosed Beatty with bipolar disorder and prescribed additional medication. [Tr. 1198-99.]

Jill Uceny is a licensed clinical social worker at Brighter Tomorrows. [Tr. 953, 1002.] Uceny had a lengthy treating relationship with Beatty — more than five years.  She indicated on the Mental Impairment Questionnaire she completed on September 22,

3

2014, that she had seen Beatty once or twice a month since 2009. [Tr. 1209.] At that time of the report, Uceny noted that Beatty was on a host of psychotropic drugs: lithium, Wellbutrin, and Prozac to name a few. *Id.* During the course of her treatment of Beatty, he had been hospitalized at Parkview Behavioral Center in 2011 for a strong suicidal ideal. *Id.* Indeed, Uceny's bottom line was that Beatty "is chronically mentally ill — his prognosis is poor." [Tr. 1209, 1218.] In her handwritten notes, Uceny set forth the depths of Beatty's mental illness:

> Brad cannot sustain consistent functioning patterns despite his [years] of consistent psychological care [and] his cooperation [with] his doctor's instructions [and] medications. Brad's energy level is extremely low due to lethargy, fatigue [and] generalized physical weakness. Brad does not handle any changes well [and] does not make transitions well. Brad does not handle work stress levels – his psychological symptoms interrupt his work day [and] work week. . . . Brad struggles to remember [and] follow instructions. His lack of ability to do so is historical as it has been a factor in every job loss . . . . Brad desires to work independently, but due to the pervasiveness of his psychological symptoms he is unable to do so. . . . . Brad struggles [with] his physical hygiene [and] is not able to be consistent in this area. Brad is <u>not</u> able to maintain socially appropriate behavior, which is a main contributing factor as to why he has lost all of his jobs.

[Tr. 1220-21 (emphasis in original).]

According to Uceny, Beatty's psychiatric condition exacerbates his pain and physical symptoms. [Tr. 1221.] She believed Beatty would be off task due to his psychological problems for 41% of the day or more. [Tr. 1222.] Uceny found Beatty had a "marked" restriction in activities of daily living; "marked" difficulties in maintaining social functioning; "marked" difficulties in maintaining concentration, persistence, and

4

pace; and that he would be absent from work more than four days each month. [Tr. 1223, 1224.] The questionnaire is signed by Uceny plus there is an additional line containing the printed name and signature of Dean R. Smith, M.D. "Supervising Physician." [Tr. 1224.]

From 2014 through 2016, Beatty continued to be treated by Dr. Dubey at the Bowen Center. [Tr. 1196-1207, 1235-1249, 1284-93, 1419-31.] Beatty also continued to see Uceny at Brighter Tomorrows for depression, anxiety, and bipolar disorder. [Tr. 1389, 1364-97.] In total, the record shows that Uceny met with Beatty at least 41 times from 2009 through 2016. [Tr. 953-991, 1001-17, 1364-97.]

Both state agency psychologists brushed aside what Uceny has to say; they indicated in their own RFC assessments (which the ALJ accorded significant weight), that they gave Uceny's RFC "no weight" because she "is not an accepted source" and incorrectly stated there was "only one therapy note in support of all cited limitations." [Tr. 127, 158.] The ALJ did not dismiss Uceny's opinion on the bases noted by the state agency psychologists; instead, the ALJ rationalized:

> I give little weight to the September 2014 opinion of treating counsel Jillorna Uceny, which was then countersigned by Dean Smith, M.D. in March 2015. Ms. Uceny stated the claimant is unable to complete a normal workweek free of interruptions from psychological symptoms, is unable to deal with normal work stress, is unable to maintain socially appropriate behavior, and would be off task more than forty one percent of a workday (B3F4-6, B4F). Ms. Uceny's opinion is greatly disproportionate to the conservative treatment course the claimant has received for his mental health symptoms since the alleged onset date. It is also inconsistent with the claimant's repeatedly unremarkable mental status exams while in treatment (B10F, B14F, B17F). Moreover, her opinion statement

5

>is also inconsistent with the claimant's present abilities to work
>part-time as a repair man in his mobile home community, being
>work activity that necessarily requires dealing with stress, and
>maintaining socially appropriate behavior.

[Tr. 23-24.]

It is well settled that the ALJ must consider the entire case record. SSR 16-3p, 2016 WL 1119029, at *4. In evaluating opinion evidence, the SSA differentiates between medical evidence from "acceptable medical sources" and "other sources." SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006). "Acceptable medical sources" include licensed physicians and psychologists, and "other sources" include clinical social workers, for example. *Id.* at *1-*2. Contrary to Beatty's suggestion, licensed clinical social workers are not considered "acceptable medical sources."[2] *Id.*

Nevertheless, under SSR 06-03p, the ALJ may use evidence from "other sources" such as Uceny, which may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P, 2006 WL 2329939, at *2. Since there is a requirement to consider all relevant evidence in an individual's record, "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources.'" *Id.* at *6. SSR 06-03P clarifies that "[o]pinions from . . . medical sources [] who are not technically deemed 'acceptable medical sources'

---

[2] The SSA has rescinded SSR 96-2p, 96-5p, and 06-03p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed after March 27, 2017. *See Notice of Rescission*, 2017 WL 3928298, at *1 (Mar. 27, 2017); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). These changes do not apply here, because Beatty's application was filed several years before the effective date.

6

under [the agency's] rules [] are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.* at *3. Indeed:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.

*Id.* Depending on the circumstances, an ALJ may determine that "an opinion from such a source is entitled to greater weight than a medical opinion from a treating source." *Id.* at *5. "For example, this could occur if the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole." *Id.* at *6.

"In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)." *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010); SSR 06-03P, 2006 WL 2329939, at *4-5 . In other words, the ALJ should consider how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with the other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise, and any other factors that tend to support or refute the opinion. SSR 06-03P, 2006 WL 2329929, at *4-5. Finally, the regulation provides:

7

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6.

Although the ALJ gave Uceny's opinion "light weight," the ALJ does not support that decision with substantial evidence. The ALJ outright rejects Uceny's opinion as "greatly disproportionate to the conservative treatment course" Beatty received. [Tr. 23.] Yet this flies in the face of the abundant evidence of Beatty's profound mental health issues. For example, he was admitted to Parkview Behavioral Center for inpatient treatment for suicidal ideation; Uceny opined he was "chronically mentally ill" and "his prognosis is poor"; he was diagnosed with bipolar and depressive disorder; he regularly took psychotropic prescription medications; he was treated by the Bowen Center and Brighter Tomorrows for many years; Dr. Dubey, the psychiatrist at the Bowen Center, indicated that even by 2016, Beatty was still having mood swings and his mood and anxiety were not controlled; and treatment notes by Uceny spanning years indicating Beatty was struggling with medication changes as well as depression, anger, anxiety, rage, headaches, tiredness, and moodiness. [Tr. 970-71, 973, 975, 977, 979, 987, 1147-48, 1199, 1218, 1221, 1372, 1386, 1396, 1429.] This doesn't sound to me like a "conservative treatment course." Far from it.

8

Although the ALJ points to three reports of "unremarkable mental status exams while in treatment," [Tr. 23], she did not fairly characterize Uceny's clinical findings in her treatment records and there are other observations from Dr. Dubey that Beatty was exhausted with poor focus, low motivation, was irritable, and angry, had mood swings, and his mood and anxiety disorders were not controlled. [Tr. 1199, 1429-30.]

The ALJ's observation that Uceny's opinion is inconsistent with Beatty's ability to work as a part time repair man in his mobile home community disregards other evidence in the record. [Tr. 17.] Beatty's working about 10-15 hours each week on average as a mobile home manager in exchange for free lot rental does not necessarily mean he can perform full-time, competitive work in a normal work environment. *See, e.g., Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Uceny noted that Beatty "acknowledges that working for the trailer park and trying to do the jobs that are required have caused him a great amount of stress." [Tr. 1380.] And as the Seventh Circuit has said, "a person who suffers from mental illness will have better days and worse days," so it does not seem fair to reject Uceny's opinion on the basis that Beatty performs some work at the trailer park in return for a spot to park his home. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

In sum, it seems to me that in her evaluation of Uceny's opinions, the ALJ impermissibly "cherry-picked" the evidence that supported her view of Beatty's

9

condition to the exclusion of an abundance of evidence to the contrary. This is impermissible and it prevents me from assessing the reasonableness of the ALJ's decision to give Uceny's opinion "little weight." *Kaminski v. Berryhill*, 894 F.3d 870, 874-75 (7th Cir. 2018); *Gerstner v. Berryhill*, 879 F.3d 257, 261-63 (7th Cir. 2018).

The ALJ also should have used the criteria listed in § 404.1527(d)(2) to describe the nature and extent of the relationship between Beatty and Uceny. *Phillips*, 413 F. App'x at 884 ("In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)"); *Dogan v. Astrue*, 751 F.Supp.2d 1029, 1039 (N.D. Ind. 2010) ("The ALJ erred in failing to apply these [§ 404.1527(d)] factors to [the nurse practitioner's] opinion"). Especially problematic in this case is the ALJ's failure to acknowledge how long Uceny treated Beatty, how often they saw each other, and Uceny's area of expertise relevant to Beatty's impairments. At the time of her RFC, Uceny had been treating Beatty for five years, she saw Beatty once or twice every month, and she continued to treat Beatty for at least two more years. Given Beatty's mental impairments, one would think that the opinion of a long-time treating clinical social worker, who saw Beatty more than any other treating medical source, would be particularly important.

Because acceptable medical sources established that Beatty has bipolar disorder and major depressive disorder (including his treating physician and the Social Security Administration's consultative examining psychologist), Uceny can be relied upon to analyze the severity of the impairments and how they affect Beatty's ability to function.

*Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (citing SSR 06-03p); Tr. 1226, 1228. The ALJ's failure to address that Uceny met with Beatty regularly over a time spanning more than 5 years, and that she was in a unique position to evaluate the severity of his mental impairments and offer an opinion on his functional capacity, is error. These considerations should have been fully considered by the ALJ in analyzing Beatty's mental health and because they were not, remand is necessary.

There is another issue that the parties touch on, and I should mention here. Although Uceny is not an acceptable medical source, Dr. Smith is. The ALJ acknowledges that Dr. Smith, the supervising physician, "countersigned" the Mental Residual Capacity Questionnaire completed by Uceny. [DE 23.] But as I recently found in *Dixon v. Berryhill*, 3:17-cv-519-PPS, 2018 WL 4292962 (N.D. Ind. Sept. 10, 2018), there is a distinction between "countersigning" and "co-signing." To countersign a document is "to write one's own name next to someone else's to verify the other signer's identity." *Id.* at *2 (quoting Black's Law Dictionary, 7th ed., p. 354). That scenario does not make sense here, where it seems I should construe Dr. Smith's signature as reflecting his adoption of Uceny's analysis and conclusions concerning Beatty's mental health.

This could render Uceny and Dr. Smith's opinion that of an acceptable medical source and treating physician, which is entitled to controlling weight so long as it is consistent with evidence in the record. 20 C.F.R. 404.1527. The Commissioner argues that this classification doesn't matter, because the ALJ rejected Uceny's opinion for other reasons anyway (not based upon her status as a clinical social worker). [DE 16 at

11

13.] But because an acceptable medical source is entitled to controlling weight so long as it is consistent with evidence in the record, on remand, the ALJ should consider Dr. Smith's role in treating Beatty, and whether his countersigning Uceny's opinion effectively grants that opinion additional weight.

Finally, the ALJ failed to mention or assign any weight at all to the opinions of at least two of Beatty's treating doctors — Dr. Jamie Gottlieb, his orthopedic surgeon, and Dr. Shivam Dubey, his treating psychiatrist. Dr. Gottlieb noted in December 2012 that Beatty was still having significant neck and back pain related to his spine issues, and in August 2015, two and a half years after Beatty's cervical discectomy and fusion, he continued to have pain. [Tr. 1309, 1295.] Dr. Dubey, Beatty's treating psychiatrist with the Bowen Center, noted in May 2014 that Beatty felt tired during the day, he gets exhausted, his focus is poor, he has low motivation, and gets irritated. [Tr. 1199.] Two years later, Dr. Dubey noted Beatty was having mood swings, that his anxiety was still present, he had 2 recent episodes where he became very angry, and he started Beatty on a new medication. [Tr. 1429.] According to Dr. Dubey, Beatty's mood and anxiety were "not controlled." [Tr. 1430.]

As the Seventh Circuit recently found in *Gerstner*, 879 F.3d at 263, even if there are sound reasons for refusing to give a treating physician's opinion controlling weight, "ALJ's must decide the weight of a treating physician's non-controlling opinion by considering, to the extent applicable, the treatment relationship's length, nature, and extent; the opinion's consistency with other evidence; the explanatory support for the

opinion; and any specialty of the treating physician." On remand, the ALJ should also consider the opinions of Drs. Gottlieb and Dubey, explain how much weight she has attributed to their opinions, and if she decides they are not entitled to controlling weight, consider the relevant factors.

\* \* \*

Because I am remanding this case for the reasons stated above, I need not discuss the remaining two issues raised by Beatty — that the ALJ's opinion that Beatty did not meet or equal Listing 12.04 and 12.06 is not supported by substantial evidence, and that the RFC failed to include all of Beatty's impairments. Beatty can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: April 22, 2019.

      /s/   Philip P. Simon
     PHILIP P. SIMON, JUDGE
     UNITED STATES DISTRICT COURT